Filed 12/17/15  P. v. Bengston CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRET ALCOTT BENGSTON,<br><br>    Defendant and Appellant. | A144826<br><br>(Mendocino County<br> Super. Ct. No. SCUKCR1477300) |

Bret Alcott Bengston appeals from a judgment entered after his conviction of first-degree burglary of a dwelling (Pen. Code, §§ 459, 460 [1]), and the imposition of a mitigated term of two years incarceration in state prison.  Bengston's appellate counsel has filed a brief asking us to independently review the record under *People v. Wende* (1979) 25 Cal.3d 436 to determine whether any arguable issues are presented.  As required under *People v. Kelly* (2006) 40 Cal.4th 106, 124, we affirmatively note that appellate counsel has informed us that she has written to Bengston at his last known address advising him of his right to file a supplemental brief and Bengston has not filed such a brief.

Bengston was charged in an information with one count of first-degree burglary, based on an incident that occurred April 14, 2014, in which he allegedly entered an inhabited home with the intent to commit a larceny or other felony.  Bengston,

---

[1]     All further unspecified statutory references are to the Penal Code.

1

represented by counsel from the public defender's office, pleaded not guilty to the charge.

Before trial commenced, defense counsel made several in limine motions, resulting in favorable rulings limiting the admission of certain evidence. At trial, the evidence included the testimony of the burglary victim, the victim's mother, and several law enforcement officers, as well as photographs of the burglarized residence. The People presented evidence that before the burglary, Bengston had called the victim and asked for the return of some of his property that was at the victim's residence. The victim told him that she was not at home, she would be gone for the next several days, and he would be allowed to get his property when the victim returned but he was not to go to the victim's residence in the meantime. The next day, the victim's mother saw Bengston, carrying a full backpack, and trespassing on property near the victim's residence. Bengston told the victim's mother that the victim had given him permission to be on the property, but the victim's mother said she owned the property and Bengston complied with a request that he leave the property. When the victim returned to her residence, several days later, she found that several of her items had been taken, and that certain items allegedly belonging to Bengston were at the residence. Bengston was found in possession of the victim's credit/debit card, which had not been cancelled but was connected to a closed bank account; the police recovered no other stolen items from Bengston. A properly instructed jury found Bengston guilty of first-degree burglary.

At the original sentencing hearing on September 12, 2014, the court found Bengston was "presumptively ineligible for probation," because the burglary conviction was a serious felony and a strike offense, and the court was not aware of any circumstances that would permit the grant of probation. In so ruling, the court considered both the circumstances of the current incident, as well as Bengston's extensive criminal history including numerous prior misdemeanor and felony convictions, that Bengston had been on probation or parole continuously since the middle or late 1990's, and he had violated either probation or parole terms on numerous occasions. As to the term of incarceration to be imposed, the court heard argument from counsel, Bengston, and the

probation department officer. The court imposed the mitigated term of two years based "primarily" on Bengston's "substantial . . . mental health issues." The court directed Bengston to pay victim restitution in the sum of $1,378.84, through the restitution program.

A few weeks later, the court, on its own motion, recalled the sentence by order filed on September 23, 2014. The recall order directed the probation department to assess what mental health services had been provided to Bengston within the last 18 months, determine whether and to what extent Bengston had availed himself of those services, and determine whether there were any additional, different mental health services available that might benefit Bengston. The court noted it had not determined whether or not to place Bengston on probation but would consider all alternatives at the recall hearing.

On October 24, 2014, the court requested and received Bengston's assurance that even though he had only one year left in custody under the sentence just imposed by the court, he would commit to a three-year probationary term and possibly additional custody time, if so indicated by a psychiatric evaluation. The court was not convinced that probation was appropriate but it was "concerned about" Bengston's mental health issues and needed to understand them. The court appointed a psychiatrist to examine and evaluate Bengston. The psychiatrist filed a report indicating Bengston had a dual diagnosis arising from substance abuse and a mood disorder that appeared to be bipolar in nature. The psychiatrist believed Bengston would not be a good candidate for community-based services, but would benefit from residential treatment of one or more years in a program that accepted dual diagnosis patients, either inside state prison or outside state prison. During November and December 2014, the court continued the matter to allow defense counsel to investigate Bengston's ability to pay for a treatment program outside state prison.

At a hearing on January 16, 2015, the court ultimately resentenced Bengston after being informed that Bengston could not arrange sufficient funding for a treatment program outside state prison. The court again found Bengston was "presumptively

3

ineligible for probation," and there were no unusual circumstances permitting the court to grant probation at that time. The court reimposed the mitigated term of two years to be served in state prison with credit for time served of 458 days.

Bengston's appellate counsel discovered no issues meriting argument, but notes that a possible legal issue appears in the record. At the original sentencing and resentencing hearings, the trial court did not inform Bengston "that as part of the sentence after expiration of the term [of imprisonment] he . . . may be on parole for a period as provided in Section 3000." (§ 1170, subd. (c).) [2] However, we conclude there is no legal issue requiring further briefing. The courts have held that a trial court's "procedural oversight" in failing to advise of the parole requirement under section 1170, subdivision (c), is not subject to relief "without analysis as to whether the defendant was harmed by the error." (*People v. McMillion* (1992) 2 Cal.App.4th 1363, 1370; see *Ibid*. [an error in accepting a plea without advising defendant of a possibility of parole term following his prison term is harmless unless it is reasonably probable defendant would have entered a different plea had he been properly advised]; see, *In re Chambliss* (1981) 119 Cal.App.3d 199, 201, 203 [appellate court rejected defendant's argument that because he was not advised of possibility of parole term (§ 1170, subd. (c)), his plea bargain should be construed as calling for parole-free release and specifically enforced as neither withdrawal of plea or resentencing were meaningful options].) Here, the record demonstrates no harm to Bengston based on the omitted advisement required under section 1170, subdivision (c), relative to a possible parole term. At the time of sentence the trial court was "not empowered to impose a prison sentence without parole;" it had "no discretion" to determine "whether a parole period shall be served nor to proscribe its

---

[2]    Section 1170, subdivision (c), reads: "The court shall state its reasons for its sentence choice on the record at the time of sentencing. The court shall also inform the defendant that as part of the sentence after expiration of the term he or she may be on parole for a period as provided in Section 3000." Section 3000 reads, in pertinent part: "(a)(1) . . . A sentence resulting in imprisonment in the state prison pursuant to Section 1168 or 1170 shall include a period of parole supervision or postrelease community supervision, unless waived, or as otherwise provided in this article."

4

duration; that is the province of the Board of Prison Terms." (*McMillion, supra*, at pp. 1368-1369; see § 3000, subd. (a)(1).) Additionally, given the fact that Bengston had been subject to a parole term after an earlier release from incarceration in state prison, we can reasonably assume he knew he might be facing the possibility of a parole term after his release from his current incarceration in state prison. Because Bengston "suffered no prejudice from the trial court's failure to advise him" of the possibility of parole, as required by section 1170, subdivision (c), there is no reason to reverse and remand for resentencing to allow the trial court to so advise defendant on the record. (*McMillion, supra*, at p. 1371.)

## DISPOSITION

The judgment is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.

*People v. Bret Alcott Bengston*, A144826

5